UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

_____

In re:

THE ALBERT LINDLEY LEE MEMORIAL HOSPITAL,
a/k/a A.L. LEE MEMORIAL HOSPITAL,

                                       Debtor.

Case No. 09-30845
Chapter 11 Case

_____

## OBJECTION TO ALLOWANCE OF PENSION PLAN TERMINATION PREMIUM PORTION OF CLAIM NO. 169 FILED BY THE PENSION BENEFIT GUARANTY CORPORATION

Debtor The Albert Lindley Lee Memorial Hospital, a/k/a A.L. Lee Memorial Hospital (the "Debtor"), by and through its counsel, Bond, Schoeneck & King, PLLC, respectfully sets forth as follows:

1.  On April 3, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11, U.S.C. §§ 101 *et seq.*, as amended (the "Bankruptcy Code"). Since the Petition Date, the Debtor has remained in possession and control of its assets as a debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

2.  An Official Committee of Unsecured Creditors (the "Committee") was appointed by the Office of the United States Trustee in these cases on April 14, 2009. No trustee or examiner has been appointed in this case.

3.  By Order dated April 7, 2009, the Court entered an Order pursuant to Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure ("FRBP") establishing September 30, 2009 as the deadline for filing Proofs of Claim against the Debtor and its estate (the "Bar Date").

4.     On November 17, 2009, the Debtor filed its Chapter 11 Plan of Liquidation (the "Plan") in this case.  Pursuant to section 6.2 of the Plan, the Debtor is authorized to file objections, settle, compromise, withdraw or litigate to judgment objections to any and all claims on behalf of its estate.

5.     The Debtor and its counsel have reviewed the Debtor's Schedules, books and records and the Claims Register maintained by the Bankruptcy Court in this case.  In addition, Debtor's counsel has conferred with the Debtor's accounting personnel and the Committee counsel concerning the various claims filed in this case.

6.     As discussed more fully below, the Debtor makes this Objection pursuant to § 502(b) of the Bankruptcy Code and FRBP 3007 and seeks an order disallowing that portion of Proof of Claim No. 169 filed by the Pension Benefit Guaranty Corporation (the "PBGC") seeking the allowance of a post-confirmation claim for pension plan termination premiums under 29 U.S.C. § 1306(a)(7) in this case.  The Debtor respectfully submits that the PBGC's claim for a termination premium should be denied because:

    (i)     the Debtor's case is a liquidating chapter 11 case;

    (ii)    the Debtor will not be emerging from its chapter 11 as an operating entity;

    (iii)   the Debtor will not be obtaining a discharge under 11 U.S.C. § 1141(d); and

    (iv)   the Debtor's liquidation case is governed by 29 U.S.C. § 1341(c)(2)(B)(i).

7.     This Court has subject matter jurisdiction to consider this Objection pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and may be determined by the Bankruptcy Court.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

1667275.4 3/1/2010

## BACKGROUND

8.     Until its closure on April 26, 2009, the Debtor was an acute care, general hospital and the sole provider of essential hospital services in Fulton, New York. The Debtor's primary service area was the approximately 40,000 residents in and around the City of Fulton. In addition, since 1988, the Debtor also operated the Phoenix Primary Care Center at 7 Bridge Street in Phoenix, New York, and formerly operated a primary care center at 450 Fulton Street, in Hannibal, New York. The Debtor's acute care division was licensed for 67 beds.

9.     As of the Petition Date, the Debtor had approximately 319 active employees. Most of the Debtor's employees were unionized and represented by 1199 SEIU United Healthcare Workers East. Management and supervisory personnel (other than dietary supervisory personnel) and certain clerical and professional employees were non-union employees.

10.     On November 28, 2006, the Commission on Health Care Facilities in the 21st Century (commonly known as the "Berger Commission") released a report and recommendations regarding the status of hospitals and other health care providers in New York State (the "Berger Commission Report"). The Berger Commission Report recommended that, among other things, the Debtor close all of its 67 beds and cease operations by June 30, 2008. The DOH thereafter extended the Debtor's closure date until June 30, 2009.

11.     On April 26, 2009, the Debtor ceased all acute care services, closed its hospital facility and surrendered its Certificate of Need (operating license) to the DOH. Since that date, the Debtor has been engaged in the orderly liquidation of its assets for the benefit of creditors under the auspices of chapter 11 of the Bankruptcy Code.

1667275.4 3/1/2010

**The Debtor's Pension Plan**

12.    Effective December 31, 1971, the Debtor established a defined benefit pension plan for its employees known as the Albert Lindley Lee Memorial Hospital Retirement Plan and Trust (the "Pension Plan"). The Debtor is the plan administrator and sponsor of the Pension Plan.

13.    The Pension Plan provides benefits to all union and non-union employees previously employed by the Debtor who have attained age 21 and completed at least one year of eligibility service. As of January 1, 2009, the most recent date for which data regarding the Pension Plan is available, the Pension Plan covered 297 active members, 34 retirees (including beneficiaries of deceased retirees), and 127 former employees who were entitled to vested deferred benefits but had not yet begun collecting on those benefits, for a total of 458 Pension Plan participants.

14.    The Pension Plan is covered by the Pension Plan Termination Insurance Program established under Title IV of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1301-1461 ("ERISA") and administered by the PBGC, a wholly-owned United States government corporation. Under this insurance program, when an underfunded pension plan is properly terminated, the PBGC generally becomes trustee of such plan and, subject to certain statutory limitations, defrays the plan's unfunded benefits from the PBGC's insurance funds.

15.    The Debtor ceased operating on April 26, 2009 in accordance with the Berger Commission recommendations and terminated most of its employees. The Debtor was no longer able to act as plan administrator of the Pension Plan and, since the Pension Plan is underfunded, the Debtor contacted the PBGC to request that the PBGC effect a distress termination of the

1667275.4 3/1/2010

Pension Plan under 29 U.S.C. § 1341(c)(2)(B)(i) because the Debtor is a liquidating entity, and to transfer the trusteeship of the Pension Plan assets to the PBGC. The proposed Pension Plan termination date was August 31, 2009.

16.     On or around January 28, 2010, the PBGC issued a letter to the Debtor advising that it has met the criteria for the distress termination of the Pension Plan under 29 U.S.C. § 1341(c)(2)(B)(i) effective as of August 31, 2009. A copy of the January 28, 2010 letter is attached hereto as Exhibit "A". The letter specifically references the Debtor's filing of a chapter 11 petition seeking liquidation on April 3, 2009, and the fact that the liquidation case is still pending, as the bases for the distress termination determination.

17.     On February 18, 2010, the Debtor executed an Agreement for Appointment of Trustee and Termination of Plan pursuant to which it agreed to transfer the trusteeship of the Pension Plan to the PBGC. The Debtor is now in the process of completing the transfer of the Pension Plan records and assets to the PBGC.

## RELIEF REQUESTED – PBGC CLAIMS

18.     On September 30, 2009, the PBGC filed four (4) Proof of Claim forms in the Debtor's case. Claim No. 169 filed by the PBGC asserts unliquidated claims for premiums, including Flat-Rate and Variable-Rate Premiums, due during both the pre-petition and post-petition periods under 29 U.S.C. § 1306(a)(3) and 29 C.F.R. § 4006.3, and also asserts a claim for distress termination premiums under 29 U.S.C. § 1306(a)(7) in an unspecified amount. A copy of Claim No. 169 is attached hereto as Exhibit "B".

19.     According to paragraph "8" of the attachment to Claim No. 169,

> If the Pension Plan terminates in a distress termination pursuant to 29 U.S.C. § 1341(c)(2)(B)(ii) or in an involuntary termination under 29 U.S.C. § 1342 while the Debtor is attempting to reorganize in Chapter 11, **and the Debtor ultimately obtains confirmation of a Chapter 11 plan of reorganization, the Debtor's**

1667275.4 3/1/2010

**obligation to PBGC for Termination Premiums does not exist until after the Chapter 11 plan is confirmed and the Debtor obtains a discharge.** *See* 29 U.S.C. § 4006(a)(7)(B). Thus under those circumstances, Termination Premiums are not a dischargeable claim or debt within the meaning of 11 U.S.C. §§ 101(5) and 1141.

(Emphases added).

The PBGC, therefore, suggests that certain termination premiums are post-confirmation obligations. *See, Pension Benefit Guaranty Corporation v. Oneida, Ltd.*, 562 F.3d 154 (2d Cir. 2009), *cert. denied*, 175 L.Ed.2d 634, 2009 U.S. LEXIS 9148 (2009).

20.     The amount of the termination premium due under 29 U.S.C. § 1306(a)(7) as a result of the termination of an underfunded defined benefit plan is $1,250 per participant for each of the three years after the plan is terminated. *See* ERISA § 4006(a)(7)(A), 29 U.S.C. § 1306(a)(7)(A). In the instant case, the potential termination premium which could be assessed against the Debtor would total approximately $1,717,500,[1] if the Debtor's case were not a liquidation case pursuant to 29 U.S.C. § 1341(c)(2)(B)(i).

21.     The Debtor hereby disputes the applicability of the termination premium assessment against it in this liquidating chapter 11 case and objects to the allowance of that portion of Claim No. 169 asserting an unspecified amount for termination premiums allegedly due under 29 U.S.C. § 1306(a)(7)(A). The Debtor respectfully requests that this Court issue an order disallowing the portion of Claim No. 169 that seeks the allowance of any pension plan termination premium claim in this case.

## DISCUSSION

### A. Claim Objections Generally

22.     Under Section 502(a) of the Bankruptcy Code, a claim or interest is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). FRBP 3007 requires a party in

---

[1] There are approximately 458 participants in the Pension Plan (458 x $1,250 x 3 = $1,717,500).

1667275.4 3/1/2010

interest to file a written objection to the allowance of a claim. A chapter 11 debtor constitutes a party in interest with standing to object to a Proof of Claim. *In re McCorhill Publ'g, Inc.* 89 B.R. 393 (Bankr. S.D.N.Y. 1988); *see also In re Dynamic Brokers, Inc.*, 293 B.R. 489, 497 (B.A.P. 9th Cir. 2003) (stating the use of Section 502(a) and Rule 3007 is one of two options available to chapter 11 debtors to challenge a claim deemed "allowed" under Section 502(a)).

23.     Upon the filing of an objection, the Court is required to determine whether and to what extent a claim may be allowed as of the petition date. 11 U.S.C. § 502(b). The Court may not allow a claim if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1).

24.     In determining whether or not a claim is enforceable against a debtor, the debtor must be given the benefit of any defense available which it could have interposed, absent bankruptcy, in a suit on the claim by the creditor. *See* 11 U.S.C. § 558; *Travelers Cas. and Sur. Co. of Am. v. Pac. Gas and Elec. Co.*, 127 S.Ct. 1199 (2007); *In re Brill,* 318 B.R. 49 (Bankr. S.D.N.Y. 2004); *In re U.S. Lines, Inc.,* 262 B.R. 223, 234-35 (S.D.N.Y. 2001); *In re Cutler-Owens Int'l, Ltd.*, 55 B.R. 291 (Bankr. S.D.N.Y. 1985).

### B.  The Termination Premium Codified in 29 U.S.C. § 1306(a)(7) Does Not Apply in a Liquidation Case

25.     An entity will be permitted to terminate its underfunded defined benefit pension plan if the contributing sponsor meets any one of the four statutory distress termination tests set forth in § 1341(c)(2)(B).[2] One of those tests, the "liquidation in bankruptcy test" permits such a pension plan to be terminated if:

---

[2] The four tests for distress termination are:

(a)	An entity has filed, or had filed against it, as of the proposed termination date, a petition seeking liquidation in a case under the Bankruptcy Code; and

(b)	Such case had not, as of the proposed termination date, been dismissed.

29 U.S.C. § 1341(c)(2)(B)(i) (the "Liquidation Test").

26.	In 2006, Congress amended ERISA to add a termination premium to be paid to the PBGC in certain situations when the PBGC takes over an underfunded single-employer defined benefit pension plan. *See* Deficit Reduction Act of 2005, § 8101(b), Pub. L. 109-171, 120 Stat. 180 (Feb. 8, 2006) (the "DRA"). The DRA's termination premium is codified in 29 U.S.C. § 1306(a)(7), which provides, in pertinent part, that

(A) In general, if there is a termination of a single-employer plan *under clause (ii) or (iii)* of section 4041(c)(2)(B) [29 U.S.C. § 1341(c)(2)(B)] or section 4042 [29 U.S.C. § 1342], there shall be payable to the corporation, with respect to each applicable 12-month period, a premium at a rate equal to $1,250 multiplied by the number of individuals who were participants in the plan immediately before the termination date. Such premium shall be in addition to any other premium under this section.

(B) Special rule for plan terminated *in bankruptcy reorganization*. In the case of a single-employer plan terminated under section 4041(c)(2)(B)(ii) [29 U.S.C. § 1341(c)(2)(B)(ii)] or under section 4042 [29 U.S.C. § 1342] *during pendency of any bankruptcy reorganization* proceeding under chapter 11 of title 11, United States Code [11 U.S.C. §§ 101 *et seq.*], or under any similar law of a State or a political subdivision of a State (or a case described in section 4041(c)(2)(B)(i) [29 U.S.C. § 1341(c)(2)(B)(i)] filed by or against such person has been converted, as of such date, to such a case in

---

1)	Liquidation in Bankruptcy Test – The requirements of this test are satisfied if the person at issue liquidates;

2)	Reorganization in Bankruptcy Test – The requirements of this test are satisfied if the person at issue files a petition for reorganization with the Bankruptcy Court and demonstrates that, unless the pension plan is terminated, it will be unable to pay all of its debts pursuant to a plan or reorganization;

3)	Inability to Continue in Business Test – This test requires a showing, to the satisfaction of the PBGC, that unless the pension plan is terminated, the person at issue will be unable to pay its debts when due and continue in business; and

4)	Unreasonably Burdensome Pension Costs Test – This test is met if a person demonstrates to the PBGC that the costs of providing pension coverage have become unreasonably burdensome solely as a result of declining covered employment under all single-employer plans for which such person is a contributing sponsor.

*See*, 29 U.S.C. § 1341(c)(2)(B); *see also*, 29 C.F.R. § 4041.41(c).

1667275.4 3/1/2010

which reorganization is sought), ***subparagraph (A) shall not apply to such plan until the date of the discharge or dismissal of such person in such case.***

29 U.S.C. § 1306(a)(7)(A) and (B) (emphases added).

27.     The Debtor's Pension Plan was terminated under the Liquidation Test of **clause (i)** of § 1341(c)(2)(B). As this Court is aware, the Debtor filed its chapter 11 case in order to effect the Berger Commission closure recommendation, and the orderly liquidation of its assets to maximize recovery to its creditors. During November 2009, the Debtor filed a Chapter 11 Plan of Liquidation which describes the Debtor's efforts to liquidate all its assets and its proposed distributions to creditors. The Debtor surrendered its operating license to the DOH on April 26, 2009 and as a result, cannot, and will not, emerge from its chapter 11 case as an operating entity. There is no question that the Debtor is seeking liquidation in a case under the Bankruptcy Code and that the case is still pending.

28.     Based upon the special rule contained in the DRA, the Debtor respectfully submits that the termination premium does not apply to pension plans terminated under the Liquidation Test, but applies only in those cases where an entity is reorganizing or emerging under the Bankruptcy Code and is terminating its pension plan under either subsection (ii) or subsection (iii) of 29 U.S.C. § 1341(c)(2)(B). This argument is buttressed by the language of the U.S. House of Representatives' Committee on the Budget's Report on the DRA, as well as the Congressional Budget Office's Cost Estimate of the DRA. Each of these reports states that "[t]he [termination] premium would not apply to firms that are **liquidated** by a bankruptcy court." Deficit Reduction Act of 2005, H.R. Rep. No. 109-276 at 75; Congressional Budget Office, Cost Estimate, S. 1932, Deficit Reduction Act at 75. (emphasis added)

29.     The Debtor respectfully submits that the recent ruling by the Second Circuit Court of Appeals in *Pension Benefit Guaranty Corporation v. Oneida, Ltd.*, 562 F.3d 154 supports the

9

result in this case. *Oneida* involved the distress termination of a pension plan during the pendency of a chapter 11 reorganization case, and the post-confirmation emergence of the debtor as an operating entity. The Second Circuit determined that an employer's obligation to pay the termination premium was not a pre-petition claim to be treated under the bankruptcy plan, because it "does not even arise until the bankruptcy itself is terminated." *Id.* at 157. The Court held that since the debtor was reorganizing as an operating entity, under the special rule, the claim does not arise until after the debtor's discharge or dismissal from its chapter 11 reorganization case. *Id.* The creation of this post-confirmation obligation is intended to recognize the PBGC's assumption of underfunded plan liabilities and prevent debtors from shedding their pension plan obligations while thereafter emerging as operating entities. *Id.* at 157-58. Moreover, upon review of 29 U.S.C. § 1341(c)(2)(B)(ii) and (iii), these two subparts clearly envision an entity which emerges from its bankruptcy case as an operating entity.

30.     In the instant case, the Debtor filed a liquidation case under chapter 11 and terminated its Pension Plan pursuant to the Liquidation Test of 29 U.S.C. § 1341(c)(2)(B)(i). The Debtor's case had not been dismissed as of the August 31, 2009 effective date of the Pension Plan termination. The Debtor did not terminate the Pension Plan under either of the "reorganization in bankruptcy tests" described in subsections (ii) or (iii) of § 1341(c)(2)(B). The Debtor ceased all business operations on April 26, 2009 and terminated nearly all of its employees. The Debtor will not be receiving a discharge under 11 U.S.C. § 1141(d). No employees will remain during the post-confirmation period, and the Debtor will not "emerge" from bankruptcy or continue hospital operations in any way. Nor will the Debtor receive a discharge, and no estate assets will remain following confirmation of the Debtor's chapter 11

10

plan from which to pay a post-confirmation obligation for termination premiums.[3] Accordingly, § 1306(a)(7) does not apply in this case and the Debtor should not be liable for any termination premium in connection with the termination of its Pension Plan. The portion of Claim No. 169 asserting an unspecified amount of termination premiums must therefore be disallowed and expunged in its entirety.

31.     The Debtor reserves the right to supplement this Objection and to object to Claim No. 169 on any grounds not stated herein. In addition, the Debtor reserves the right to object to all other Proofs of Claim filed by the PBGC, or any other party, in the Debtor's case.

32.     Pursuant to FRBP 3007 and 5005, the Debtor will provide at least thirty (30) days' notice of this Objection to: (a) the PBGC; (b) the Office of the United States Attorney; (c) the Office of the United States Trustee; (d) counsel for the Committee; and (e) all parties requesting notice in these cases. The Debtor respectfully submits that no other or further notice is necessary or required.

33.     No other or prior motion for the relief sought herein has been made to this Court or any other Court.

## CONCLUSION

**WHEREFORE**, based upon the foregoing, the Debtor respectfully requests that the Court issue an Order:

      a.      disallowing and expunging that portion of Claim No. 169 filed by the Pension Benefit Guaranty Corporation asserting an unspecified amount

---

[3] *See Oneida Ltd. v. Pension Benefit Guaranty Corporation (In re Oneida Ltd.)*, 383 B.R. 29, 39 n.8 (Bankr. S.D.N.Y. 2008), *rev'd on other grounds*, 562 F.3d 154 (2d Cir. 2009) ("If a corporate debtor liquidates in Chapter 11, it does not obtain a discharge. 11 U.S.C. § 1141(d)(3)(A). However, in that case, it no longer undergoes a reorganization, there are no employees in the post-confirmation period, and the DRA Amendment does not appear to have any application at all").

1667275.4 3/1/2010

due for pension plan termination premiums under 29 U.S.C. § 1306(a)(7); and

b.    awarding such other and further relief as the Court deems just and proper.

Dated: March 1, 2010
      Syracuse, New York

                          BOND, SCHOENECK & KING, PLLC

By: _____
           Stephen A. Donato, Esq., of counsel and
           Camille W. Hill, Esq., of counsel
           *Attorneys for the Debtor*
           Office and Post Office Address:
           One Lincoln Center
           Syracuse, New York 13202
           Telephone: (315) 218-8000

1667275.4 3/1/2010