UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

THE ALBERT LINDLEY LEE MEMORIAL HOSPITAL
a/k/a A.L. LEE MEMORIAL HOSPITAL,

Debtor.

Case No. 09-30845
Chapter 11 Case

## FOURTH APPLICATION FOR ALLOWANCE OF INTERIM COMPENSATION BY BOND, SCHOENECK & KING, PLLC, AS ATTORNEYS FOR DEBTOR

TO: THE HONORABLE MARGARET CANGILOS-RUIZ
UNITED STATES BANKRUPTCY JUDGE:

Bond, Schoeneck & King, PLLC, by Camille W. Hill, for a fourth allowance of interim compensation for services rendered herein from March 1, 2010 through July 31, 2010, respectfully makes the following application (the "Application") to the United States Bankruptcy Court for the Northern District of New York (the "Court"):

1. Bond, Schoeneck & King, PLLC ("BS&K") is a professional limited liability company engaged in the practice of law with an office at One Lincoln Center, Syracuse, New York. The undersigned is a member of BS&K and is an attorney duly licensed to practice in the Courts of the State of New York and the United States District Court for the Northern District of New York.

2. BS&K makes this Application for a fourth allowance of interim compensation for legal services rendered in the amount of $124,121.50 and for reimbursement of actual and necessary costs and expenses in the amount of $14,051.63 incurred by BS&K during its representation of debtor The Albert Lindley Lee Memorial Hospital a/k/a A.L. Lee Memorial

Hospital (the "Debtor") in the chapter 11 case herein. This Application covers the period of March 1, 2010 through July 31, 2010 (the "Fourth Compensation Period").

3. In addition to requesting an award in connection with the services rendered during the Fourth Compensation Period, BS&K also respectfully requests that the Court issue an order awarding BS&K the sum of $20,338.50, which represents the 20% holdback previously imposed by the Court in connection with BS&K's third interim application for allowance of professional compensation.

## GENERAL BACKGROUND

4. On April 3, 2009 (the "Petition Date"), the Debtor filed with the United States Bankruptcy Court for the Northern District of New York (the "Court") its voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 case.

5. The Debtor is a New York not-for-profit corporation located at 510 South Fourth Street, Fulton, New York. In March of 1974, the Debtor became The Albert Lindley Lee Memorial Hospital, a voluntary not-for-profit corporation organized under Section 402 of the New York State Not-for-Profit Corporation Law.

6. Until its closure on April 26, 2009, the Debtor operated an acute care, general hospital and was the sole provider of essential hospital services in Fulton, New York. The Debtor's primary service area was the approximately 40,000 residents in and around the City of Fulton. In addition, since 1988, the Debtor also operated the Phoenix Primary Care Center at 7 Bridge Street in Phoenix, New York, and formerly operated a primary care center at 450 Fulton Street, in Hannibal, New York.

1741107.2 8/25/2010

7. Since the Petition Date, the Debtor has remained in control of its assets as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

8. On April 24, 2009, this Court entered an Order appointing BS&K as attorneys to the Debtor, effective as of the Petition Date. As disclosed in BS&K's retention application, BS&K received a pre-petition retainer in the sum of $125,000.00 to secure fees and expenses earned in representing the Debtor in its chapter 11 case.

9. On August 10, 2009, this Court issued an Order Approving First Interim Application for Compensation by Bond, Schoeneck & King, PLLC as Attorneys for Debtor and awarded BS&K the total sum of $141,729.50 in fees and $10,233.87 in expenses for a total award of $151,963.37 for the period of April 3, 2009 through May 31, 2009. BS&K was paid in full from its retainer and the Debtor's estate for all professional fees and expenses awarded through May 31, 2009.

10. On December 13, 2009, this Court issued an Order Approving Second Interim Application for Compensation by Bond, Schoeneck & King, PLLC as Attorneys for Debtor and awarded BS&K the total sum of $161,784.00 in fees and $15,191.36 in expenses for a total award of $176,975.36 for the period of June 1, 2009 through September 30, 2009. BS&K was paid in full from the Debtor's estate for all professional fees and expenses awarded through September 30, 2009.

11. On May 12, 2010, this Court issued an Order Approving Third Interim Application for Compensation by Bond, Schoeneck & King, PLLC as Attorneys for Debtor and awarded BS&K eighty percent (80%) of its interim fees in the sum of $81,354.00 and one hundred percent (100%) of its expenses in the amount of $4,594.08, for a total award of

$85,948.08 for the period October 1, 2009 through February 28, 2010. BS&K was paid from the Debtor's estate for all professional fees and expenses awarded through February 28, 2010.

12. During the Fourth Compensation Period, BS&K continued to provide general business restructuring, bankruptcy law and labor law services to the Debtor, including all of those matters set forth below.

**SUMMARY OF SERVICES RENDERED BY BOND, SCHOENECK & KING, PLLC TO THE DEBTOR DURING THE FOURTH COMPENSATION PERIOD**

13. The following paragraphs provide a written description of substantive areas in which BS&K devoted significant amounts of time during the Fourth Compensation Period.

14. **B110: CASE ADMINISTRATION:** BS&K devoted 23.30 hours and fees in the amount of $3,132.00 in connection with case administration. BS&K's efforts in this regard included advising the Debtor concerning business operations as a debtor in possession pursuant to the Code and the United States Trustee (the "UST") guidelines.

15. In addition, BS&K continued to advise the Debtor concerning the filing of the monthly operating reports and assisted the Debtor with compiling the information necessary to complete the operating reports for November and December 2009 and January through April 2010.

16. **B120: ASSET ANALYSIS AND RECOVERY:** BS&K devoted 1.00 hour and fees in the amount of $290.00 in connection with collection of the Debtor's accounts receivable. BS&K reviewed the Debtor's account recovery reports and engaged in discussions with the Debtor and counsel for the Official Committee of Unsecured Creditors (the "Committee") concerning proposed strategies for the collection of these outstanding accounts and the potential transfer of all collection actions to ACL Adjustment Associates, Inc.

17. **B130: ASSET DISPOSITION:** BS&K devoted 175.70 hours and fees in the amount of $45,915.50 in connection with the sale of the Debtor's assets.

18. During the Fourth Compensation Period, BS&K continued to assist the Debtor in moving toward the sale closing with Oswego Hospital. During July 2010, Oswego Hospital advised the Debtor that its HEAL NY Grant was approved and that it is now in a position to effectuate the sale closing. The parties anticipate that the closing will occur during mid-October 2010. As discussed more fully below, BS&K has worked to satisfy certain conditions to closing contained in the Oswego Hospital Asset Purchase Agreement (the "APA"), including the release of certain reversionary rights encumbering the hospital real property.

19. The deed pursuant to which the City of Fulton (the "City") conveyed the hospital real property to the Debtor in 1974 contains the following language: "These premises . . . are conveyed subject to the condition that in the event the [Debtor], its successors or assigns, shall fail to operate a general hospital for the benefit of the citizens of the City of Fulton and its environs . . . the [City] may enter and terminate the estate hereby conveyed . . ." (the "Reversionary Clause"). The original deed from 1910 conveying the real property from Victorine Lee to the City of Fulton for the purpose of constructing the hospital also contained a use restriction. The removal of these encumbrances is a condition to closing under the APA. In an effort to satisfy this condition, BS&K researched all parties' rights under the use restriction and Reversionary Clause, conferred with the Debtor and counsel for Oswego Hospital and the City concerning the proposed removal of use restriction and Reversionary Clause, attended a meeting with the City's mayor and the City Council and a public hearing concerning the

proposed removal and engaged in numerous follow-up conferences with the counsel for the City and Oswego Hospital.[1]

20. The approval of the asset sale to Oswego Hospital by the New York State Supreme Court is another condition precedent to the sale closing. During the Fourth Compensation Period, BS&K continued to revise the Verified Petition to be filed with the New York State Supreme Court seeking approval of the sale to Oswego Hospital, and the disposition of all other assets, under §§ 510 and 511 of the New York Not-for-Profit Corporation Law.

21. In addition to the foregoing, BS&K also negotiated amendments to the lease by and between the Debtor and Oswego Hospital and has engaged in numerous discussions with counsel for Oswego Hospital concerning maintenance and security issues, environmental testing issues and the status of Oswego Hospital's HEAL Grant funds.

22. During the Fourth Compensation Period, BS&K also continued to review purchase offers from interested parties for the medical office building located in Fulton, New York (the "Medical Office Building") and owned by Lee Development Corporation, a subsidiary of the Debtor. BS&K engaged in discussions with the Debtor, real estate broker Pyramid Brokerage Company, counsel for Oswego Hospital. counsel for mortgagee Bank of America and counsel for lienholder Pension Benefit Guaranty Corporation ("PBGC") concerning the status of the marketing effort and potential sales. The Medical Office Building is still being marketed; however, Oswego Hospital has expressed an interest in acquiring the property.

23. BS&K also continued to assist the Debtor with the sale of its various residential and commercial real properties located in Fulton, New York. Specifically, BS&K drafted motions to sell property located at (i) 460 Park Street to Harold L. Perau and John W. Peterson

---

[1] Subsequent to the Fourth Compensation Period, on August 5, 2010, the City filed a Proof of Claim in this case asserting a secured claim in an unknown amount based upon the Reversionary Clause. BS&K anticipates that the validity and amount of the City's Proof of Claim will be the subject of future hearings before this Court.

and (ii) 451 and 455 South Fourth Street to Michaud Residential Health Services. BS&K appeared at the motion hearings and drafted the orders approving the sales. BS&K also conferred with the Debtor's local real estate counsel handling the sales concerning closing issues.

24. BS&K also continued to review offers received from Horizon Resources, LLC to purchase the Debtor's accounts receivable. BS&K engaged in discussions with the Debtor, counsel for the Committee and counsel for Horizon Resources, LLC concerning these offers.

25. **B140: RELIEF FROM STAY/ADEQUATE PROTECTION:** BS&K devoted 1.50 hours and fees in the amount of $330.00 in connection with stay relief matters. Specifically, BS&K received and reviewed the motion filed on behalf of Christine Duskee seeking relief from the automatic stay to pursue a medical malpractice claim against the Debtor (the "Lift Stay Motion"). In connection with the Lift Stay Motion, BS&K negotiated the terms of an order whereby the Debtor agreed to modify the automatic stay and allow Christine Duskee to pursue recovery of a medical malpractice claim against the applicable insurance proceeds.

26. **B150: MEETINGS OF & COMMUNICATIONS WITH CREDITORS:** BS&K devoted 1.80 hours and fees in the amount of $432.00 in connection with communications with creditors and/or counsel for the Committee. BS&K engaged in discussions with counsel for the Committee regarding the offer from Horizon Resources, LLC to purchase the Debtor's accounts receivable, payment of employee benefit claims, chapter 5 recoveries, retention of ACL Adjustment Associates, Inc. to collect accounts receivable and the Committee's support of the Debtor's proposed chapter 11 plan of liquidation.

27. **B160: FEE/EMPLOYMENT APPLICATIONS:** BS&K devoted 23.40 hours and fees in the amount of $4,351.00 in connection with the preparation and filing of applications to employ and compensate professionals in this case. BS&K drafted, filed and served its third

interim application for compensation as attorneys for the Debtor. In connection with the drafting and submission of the fee application, BS&K appeared before the Court in support of the fee application, consulted with the UST concerning the UST's objections and thereafter submitted an order approving the fee application.

28. BS&K also engaged in discussions with counsel for the Committee concerning the retention of ACL Adjustment Associates, Inc. ("ACL") to assist in the collection of the Debtor's accounts receivable, and reviewed and revised the proposed joint retention application.

29. In addition, BS&K drafted and filed the application appointing Milliman, Inc. ("Milliman") as pension consultants to the Debtor to assist with the review and reconciliation of the various claims filed by the PBGC. In connection with Milliman's retention, BS&K engaged in discussions with representatives of Milliman to obtain the necessary information for the retention papers.

30. **B185: ASSUMPTION/REJECTION OF LEASES/CONTRACTS:** BS&K devoted 14.40 hours and fees in the amount of $4,286.00 in connection with the Debtor's assumption and/or rejection of executory contracts and unexpired leases.

31. During the Fourth Compensation Period, BS&K continued to assist the Debtor with preparing and reviewing certain proposed amendments and extensions to the pre-petition lease agreements with Oswego Hospital. Specifically, BS&K engaged in discussions with the Debtor and counsel for Oswego Hospital concerning renewal terms, the potential for rent increases and the potential for a new lease for the Medical Office Building.

32. BS&K incurred time negotiating an extension of and amendments to the agreement with Meditech concerning the Meditech financial and patient record software. BS&K

engaged in discussions with the Debtor, counsel for Meditech and counsel for Oswego Hospital concerning the terms of the amended agreement.

33. BS&K also prepared the necessary agreements extending the lease by and between the Debtor and Michaud Residential Health Services, Inc. whereby Michaud leases a portion of the Debtor's premises located at 510 South Fourth Street, Fulton, New York.

34. In addition, BS&K engaged in discussions with various equipment lessors and their counsel concerning the status of cure payment due under the leases assumed by the Debtor.

35. **B190: OTHER CONTESTED MATTERS:** BS&K devoted 7.60 hours and fees in the amount of $1,793.00 in connection with various contested matters.

36. BS&K continued to advise the Debtor with respect to Fulton Savings Bank's motion for a deficiency judgment against Lee Development Corporation and conferred with counsel for Fulton Savings Bank regarding same.

37. BS&K also received and reviewed the motion filed by Horizon Resources, LLC seeking to compel the Debtor to sell certain accounts receivable (the "Horizon Motion"). BS&K engaged in discussions with counsel for the Committee concerning a joint objection to the Horizon Motion, appeared on behalf of the Debtor in opposition to the Horizon Motion and thereafter, drafted and filed an order denying the Horizon Motion.

38. **B210: BUSINESS OPERATIONS:** BS&K devoted 37.80 hours and fees in the amount of $11,086.50 in connection with the Debtor's general business operations. BS&K performed extensive services in connection with the day to day operations of a debtor in possession, and continued to assist the Debtor with the numerous wind-down issues affecting the Debtor, including responding to inquiries presented to BS&K by representatives of the Debtor on a daily basis. Specifically, BS&K advised the Debtor concerning real property purchase offers,

accounts receivable collection issues, employee benefit payments, HEAL Grant submissions, New York State Department of Labor claim, Pension Benefit Guaranty Corporation claims, cash flow projections, City of Fulton tax assessment, SEIU training fund information requests, and staffing issues.

39. BS&K also advised and assisted the Debtor with various post-petition financial accounting matters, particularly as they relate to operations as a debtor in possession under the terms of the Code and the operating guidelines of the UST.

40. The Hospital received its HEAL NY Grant reimbursement check in the amount of $2,559,454.00 from the New York State Department of Health on March 18, 2010 in large part as a result of the Deficit Reduction Plan Impact Statement drafted and submitted by BS&K on behalf of the Debtor on January 14, 2010. Following the Debtor's receipt of the grant funds, BS&K advised the Debtor concerning the procedures for depositing the grant funds and conferred with the Debtor concerning the timing and submission of HEAL Grant vouchers for the payments of PBGC claims and claims for lease cure payments.

41. During the Fourth Compensation Period, BS&K attended various meetings with the Debtor's Board of Directors to keep the Board apprised of the status of the Debtor's chapter 11 case.

42. Finally, BS&K negotiated the terms of an amendment to the security and maintenance agreement by and between the Debtor and Oswego Hospital and engaged in discussions with the Debtor and counsel for Oswego Hospital concerning same.

43. **B220: EMPLOYEE BENEFITS/PENSIONS:** BS&K devoted 15.00 hours and fees in the amount of $4,830.00 in connection with employment and pension matters.

44. During the Fourth Compensation Period, BS&K reviewed and analyzed the PBGC's claim for pension plan termination premiums. These premiums totaled approximately $1,800,000 and would have been treated as post-confirmation/administrative claims in the Debtor's case. As discussed more fully below, following discussions with counsel for the PBGC, the PBGC agreed to withdraw its claim for pension plan termination premiums.

45. BS&K also continued to engage in discussions with the Debtor and counsel for the PBGC concerning the logistics of terminating the Debtor's pension plan. BS&K received and reviewed correspondence from the PBGC concerning the effective date of the agreement to terminate the pension plan, reviewed the transfer procedures in connection with the assignment of a pension trustee and conferred with counsel for the PBGC regarding general pension plan issues.

46. BS&K also drafted affidavits on behalf of certain key employees in support of their entitlement to the second installments of the key employee incentive plan payments and engaged in discussions with the Debtor concerning payment of the employee benefit claims from the HEAL Grant funds.

47. **B240: TAX ISSUES:** BS&K devoted 12.00 hours and fees in the amount of $3,239.50 in connection with tax issues. Specifically, BS&K conducted research regarding property tax exemptions and appellate procedures regarding tax assessments, reviewed the decision by the Tax Assessment Board pertaining to the assessment of the Debtor's hospital property, prepared the necessary Article 7 petition and complaint appealing the tax assessment decision and engaged in numerous discussions with the Debtor and counsel for Oswego Hospital concerning same. The Article 7 petition was filed on July 30, 2010.

48. **B310: CLAIMS ADMINISTRATION AND OBJECTIONS:** BS&K devoted 99.00 hours and fees in the amount of $25,721.00 in connection with claims administration and objection issues. BS&K's efforts in this regard have primarily involved analyzing certain types of claims as they are received. Most significantly, BS&K analyzed the claims filed on behalf of the New York State Department of Labor (the "DOL") and the PBGC and filed objections to those claims.

49. With respect to the claim filed by the DOL, BS&K received and reviewed the response filed by the DOL to the Debtor's claim objection (the "DOL Response"), reviewed case law regarding the treatment of unemployment insurance reimbursement claims, prepared and filed a reply to the DOL Response, prepared for and appeared before the Court in connection with the DOL claim objection, reviewed the Court's Memorandum Decision denying the claim objection and prepared and filed a notice of appeal with respect to that Decision. Thereafter, BS&K negotiated the terms of a stipulation and order reducing and fixing the amount of the claims allowed on behalf of the DOL.

50. BS&K also drafted and filed an objection to the PBGC's claim seeking recovery of pension plan termination premiums (the "PBGC Claim Objection") and concluded research regarding treatment of the claim when the plan is under-funded. Subsequent to the filing of the PBGC Claim Objection, but prior to the hearing, BS&K negotiated a settlement with counsel for the PBGC whereby the PBGC agreed to withdraw its claim for pension plan termination premiums. The PBGC officially withdrew its claim on June 3, 2010. BS&K continues to negotiate with the PBGC concerning a resolution of its remaining claims.

51. During the Fourth Compensation Period, BS&K also drafted, filed and served a motion to approve procedures, bar date and form of notice for administrative expense claims and

claims under 11 U.S.C. § 503(b)(9) and appeared before this Court in support of that motion. Following the entry of an order approving those procedures, BS&K received and reviewed the administrative claims filed on behalf of the City of Fulton, SEIU 1199 Training Fund, Cardinal Health and the New York State Department of Health. BS&K also negotiated the terms of a proposed claim settlement stipulation with counsel for SEIU 1199 Training Fund and Cardinal Health.

52. **B320: PLAN AND DISCLOSURE STATEMENT:** BS&K devoted 69.30 hours and fees in the amount of $17,280.00 in connection with the preparation of the Debtor's plan and disclosure statement.

53. On March 12, 2010, the Debtor filed its Amended Disclosure Statement and Amended Chapter 11 Plan of Liquidation (the "Amended Plan") with this Court. The amended documents were filed following negotiations with the Office of the United States Trustee, counsel for the Committee and counsel for the PBGC concerning their respective objections to the Debtor's original chapter 11 plan and disclosure statement. The Amended Disclosure Statement was approved by Order of this Court on March 16, 2010.

54. Following approval of the Amended Disclosure Statement, BS&K assembled the plan solicitation packages to be served upon all creditors and parties in interest in this case, drafted the voting ballot and related materials, and responded to creditor inquiries with respect to the solicitation package. Following receipt of all ballots, BS&K prepared and filed the Ballot Certification with the Court on June 3, 2010.

55. During that period, BS&K also prepared, filed and served a motion for an Order extending the Debtor's acceptance period until June 10, 2010 (the "Third Exclusivity Motion"). BS&K appeared before the Court on behalf of the Debtor in support of the Third Exclusivity

Motion and thereafter, drafted and submitted an order extending the Debtor's acceptance period until June 10, 2010.

57. BS&K received and reviewed the objections to confirmation filed on behalf of Fulton Savings Bank, the PBGC and the Office of the United States Trustee and negotiated resolutions to those objections. BS&K also prepared for the confirmation hearing and met with the Debtor's Executive Director to prepare his testimony for the confirmation hearing. On June 10, 2010, BS&K attended the plan confirmation hearing on behalf of the Debtor and obtained confirmation of the Amended Plan. BS&K thereafter negotiated the terms of an order confirming the Amended Plan, and on July 15, 2010, this Court entered the Order confirming the Amended Plan.

## DISCUSSION

57. All of the services for which compensation is requested by BS&K were performed for, or on behalf of, the Debtor, and not on behalf of any creditor, examiner, trustee, or any other entity. In addition, BS&K has not entered into any agreements to fix fees or to share compensation as prohibited by 18 U.S.C. § 155 and 11 U.S.C. § 504.

58. As this Application demonstrates, the services that BS&K has rendered on behalf of the Debtor have been beneficial to the estate in that the services have been utilized to assist the Debtor for those matters outlined above.

59. BS&K, in the ordinary course of its business, maintains computerized time and financial records. Attached to this Application as Exhibit "A" are the detailed time records, itemized by project category, of the actual services performed on behalf of the Debtor from March 1, 2010 through July 31, 2010.

60. The following is a list of the professionals who performed services on behalf of the Debtor in this case during the Fourth Compensation Period, together with regular billing rates for each professional:

| Name | Rate | Hours | Total |
|---|---|---|---|
| S. Donato | $340.00 | 63.20 | $21,488.00 |
| S. Daley | $340.00 | 6.50 | $2,210.00 |
| R. Bordoni | $340.00 | .20 | $68.00 |
| J. Elleman | $295.00 | 6.00 | $1,770.00 |
| C. Hill | $290.00 | 177.20 | $51,388.00 |
| R. McDonald | $285.00 | 74.40 | $21,204.00 |
| F. Patyi | $270.00 | .60 | $162.00 |
| K. Bennett | $240.00 | 6.00 | $1,440.00 |
| K. Pole | $215.00 | 8.50 | $1,827.50 |
| S. Temes | $210.00 | 4.70 | $987.00 |
| T. Kennedy | $200.00 | 26.50 | $5,300.00 |
| K. Weber | $165.00 | 31.00 | $5,115.00 |
| K. Doner (Paralegal) | $140.00 | 51.50 | $7,210.00 |
| T. Vanetti (Paralegal) | $130.00 | 26.80 | $3,484.00 |
| M. Burchill (Paralegal) | $120.00 | 3.90 | 468.00 |
| **GRAND TOTAL:** | | **487.00** | **$124,121.50** |

The attorney primarily responsible for representing the Debtor in connection with this case is Stephen A. Donato. Stephen A. Donato's practice consists generally of commercial and bankruptcy matters on both the debtor and creditor sides. Mr. Donato has practiced before the United States Bankruptcy Court for over twenty-seven (27) years.

61. BS&K notes that twelve factors are usually reviewed by the Court in calculating the fee due to professionals in bankruptcy cases:

(1) the time and labor required;

(2) the novelty and difficulty of issues;

(3) the skill necessary to perform the services properly;

(4) the preclusion of other employment;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or circumstances;

(8) the amounts involved and the results obtained;

(9) the experience, reputation and ability of the professional;

(10) the undesirability of the case;

(11) the nature and length of the professional relationship to the client; and

(12) awards in similar cases.

62. In addition to the foregoing specified services, BS&K believes that it has performed further services which are not reflected on the time records. In cases composed of several separate ongoing matters such as these, it is impossible to record the detail of each letter, telephone call, conference time or research. Many such hours have been performed to date, but BS&K is not requesting compensation for same.

63. BS&K respectfully suggests that the fair and reasonable value of the services performed by it for the period March 1, 2010 through July 31, 2010 is $124,121.50. No payment has been promised to BS&K in respect thereto. As discussed above, BS&K applied its entire pre-petition retainer to the amounts awarded in connection with its first interim professional fee application. As a result, BS&K respectfully requests that any fees and expenses awarded to it in connection with this Application be paid from the Debtor's estate, and be paid upon the entry of an order approving such compensation.

64. In addition, BS&K respectfully requests that this Court allow, and direct payment of, the twenty percent (20%) holdback totaling $20,338.50 which was withheld in connection with BS&K's third interim fee application.

16

1741107.2 8/25/2010

**DISBURSEMENTS**

65. BS&K has incurred reasonable and necessary out-of-pocket disbursements in connection with its representation of the Debtor during the period of March 1, 2010 through July 31, 2010. BS&K has expended a total of $14,051.63 in actual disbursements on behalf of the Debtor during that period, as set forth in Exhibit "B" attached hereto, none of which have been reimbursed to date.

**A.     Photocopy Expenses**

66. Between March 1, 2010 and July 31, 2010, BS&K incurred $4,364.40, $2,810.88 and $362.25, respectively, in total disbursements for photocopy expenses on behalf of the Debtor. The Debtor was charged $.20 per photocopy for all photocopies made by BS&K. Photocopies made outside BS&K's office were charged to the Debtor at the same rate charged to BS&K. BS&K hereby certifies that this entire amount of $7,537.53 was incurred on behalf of the Debtor in accordance with Local Rule 2016-1(b) through furnishing copies of documents to numerous parties upon request and is required by the Bankruptcy Code and Rules.

67. Accordingly, BS&K respectfully requests an allowance for total photocopying expenses incurred from March 1, 2010 through July 31, 2010 in the amount of $7,537.53.

**B.     Travel Expenses**

68. BS&K also incurred out-of-pocket expenses for travel in the Debtor's case during the period March 1, 2010 through July 31, 2010 in the sum of $259.00. In accordance with Local Rule 2016-1(b), BS&K's travel expenses are separately itemized on Exhibit "C" annexed hereto and made a part hereof.

69. Accordingly, BS&K respectfully requests an allowance for its travel expenses in the total amount of $259.00.

C. **Telecopies**

70. BS&K incurred charges for facsimile transmissions totaling $61.00 during the period of March 1, 2010 through July 31, 2010 in this case. Each of these transmissions was incurred on behalf of the Debtor by BS&K at a rate of $1.00 per page, and a total of 61 pages were telecopied by BS&K to the Court, counsel, creditors or other parties in interest in accordance with Local Rule 2016-1(b) in connection with this case.

71. Accordingly, BS&K respectfully requests an allowance for its facsimile expenses in the total amount of $61.00.

72. Based upon the foregoing, BS&K requests approval for all of its disbursements in the total sum of $14,051.63.

**CONCLUSION**

73. Based upon the foregoing, BS&K respectfully requests that the Court approve a fourth interim allowance of professional compensation in the sum of $124,121.50 for services rendered to the Debtor from March 1, 2010 through July 31, 2010, plus BS&K's disbursements in the sum of $14,051.63, for a total award of $138,173.13.

74. In addition, BS&K respectfully requests that the Court approve payment of the twenty percent (20%) holdback from its third interim fee application in the amount of $20,338.50.

75. BS&K respectfully requests that the Court approve payment, from the Debtor's estate, of the fees and expenses awarded in this case.

1741107.2 8/25/2010

**WHEREFORE**, Bond, Schoeneck & King, PLLC respectfully prays for the entry of an Order:

(a) approving and awarding a fourth interim allowance of fees to BS&K for services rendered to the Debtor during the period of March 1, 2010 through July 31, 2010 in the sum of $124,121.50, together with actual and necessary disbursements in the amount of $14,051.63;

(b) directing that BS&K be paid, from the Debtor's estate, the full amount of fees and disbursements incurred during the Fourth Compensation Period in the amount of $138,173.13;

(c) directing that BS&K be paid, from the Debtor's estate, the remaining 20% of its fees incurred in connection with its Third Fee Application in the amount of $20,338.50; and

(d) granting such other and further relief as this Court deems just and proper.

Dated: August 25, 2010
       Syracuse, New York

BOND, SCHOENECK & KING, PLLC

By:    /s/ Camille W. Hill
Stephen A. Donato, Esq.
Camille W. Hill, Esq.
*Attorneys for the Debtor*
Office and Post Office Address:
One Lincoln Center
Syracuse, New York 13202
Telephone: (315) 218-8000
Facsimile: (315) 218-8100